# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Alexis Guthrie; Christopher Guthrie
In Pro Se

_____,
             Plaintiffs

Court File No.: 12cv2472 PAM/LIB

**Complaint**
**(Jury Trial  Demanded)**

VS.

Bank of America, National Association, BAC
Home Loan Servicing LP, et al.; The Bank of
New York Mellon, fka The Bank of New York
as Trustee

_____,
             Defendants

_____

COMES NOW Plaintiffs Alexis Guthrie and Christopher Guthrie with their

complaint against Bank of America, National Association, BAC Home Loan

Servicing LP, et al., and The Bank of New York Mellon, fka The Bank of New

York as Trustee (Bank of America, National Association and BAC Home Loans

Servicing LP a subsidiary of Bank of America National Association herein is

referred to collectively as BANA, and The Bank of New York Mellon, fka The

Bank of New York as Trustee, et al. is referred to as BNYM), states and alleges as

follows:

SCANNED
SEP 2 6 2012
U.S. DISTRICT COURT MPLS

## Introduction

1. Plaintiffs bring this action on behalf of themselves after having requested a mortgage modification with BANA under the Making Homes Affordable Program (herein referred to as MHA) under the Home Affordable Modification Program (herein referred to under it's common abbreviation HAMP) which was created by the Financial Stability Act of 2009.

2. The Plaintiffs were engaged in the HAMP application and review process at the time their home was foreclosed upon and sold at Sheriff's sale illegally.  The Plaintiffs only became aware of Sheriff's sale of their home when BNYM served an eviction notice by way of conspicuous posting on the home after the Plaintiffs right of redemption period had ended unbeknownst to the Plaintiffs.

3. BANA engaged in deceptive acts and practices by engaging in the HAMP process and notifying the Plaintiffs that they were being considered under the program sending them notice of receipt of their completed application on multiple occasions with the last notice being sent just 8 days before the home was sold at Sheriff's sale.  The notices sent by BANA to the Plaintiffs are required by law and advised the Plaintiffs that their documents had been received and that the Plaintiffs would hear from BANA within 20 business days.

4. BANA engaged in further deceptive acts and practices by repeatedly claiming lost, non received, missing, or misplaced forms in the Plaintiffs application. These claims by BANA that they had not received or lost pieces of the plaintiff's application caused delays in processing and lead to multiple submissions of fully completed application paperwork. The delays were used by BANA to continue processing the foreclosure and prevent the mortgage modification of the plaintiff's property a process which forces BANA to write down the mortgage and adjust it with incentives provided by the U.S. Treasury department under the HAMP. This process would end in a net loss or write down to BANA making it in their best interest to engage in delay tactics to slow the processing of HAMP applications thereby allowing the foreclosure of homes to proceed unabated.

5.BANA engaged in illegal acts by not postponing the Sheriff's sale as required under the law and as required under the HAMP.

6. BANA engaged in illegal actions within the Equal Credit Opportunity Act (herein referred to by it's informal name ECOA) codified as 15 U.S.C § 1691 when it failed to consider a completed application for HAMP and return a response within 30 days of receiving a completed application for the HAMP program. When BANA took an "adverse action" to sell the home at Sheriff's sale without considering the application for modification and relief under HAMP they failed to

provide a notice of "adverse action" as required under law providing response to the Plaintiffs that they were not qualified for or were being declined for HAMP which was never fully determined prior to the Sheriff's sale. This same process is required under MHA and HAMP and is directed by the U.S. Treasury Department with the force of law in the MHA handbook v3.0-v3.3 Chapter I § 1.6 as is the compliance with all applicable federal, state, and local laws including statutes, regulations, ordinances, administrative rules and orders that have the effect of law. The rules set up under MHA and the HAMP effectively carry the weight of law as BANA accepted taxpayer funds under the Troubled Asset Relief Program (herein referred to under its common name TARP).  BANA accepted TARP funds totaling $25 billion which carried the legal requirement that BANA participate in MHA and the HAMP. The TARP fund acceptance as directed by the U.S. Treasury department carried with it the requirement that BANA enter into a Service Participation Agreement (herein referred to as a SPA) (see MHA Handbook v3.0 Chapter I § 1.1 that was effective on 2 December 2010, v3.1 Chapter I § 1.1 effective on 2 May 2011, v3.2 Chapter I § 1.1 effective on 1 June 2011, and v3.3 Chapter I § 1.1 effective on 1 September 2011 covering the period of the Plaintiffs application for HAMP).  Effectively this SPA is a contract with the U.S. Treasury Department and requires compliance with HAMP regulations.

7.Though the Plaintiffs are not direct party to the contract between BANA and the U.S. Treasury Department, homeowners including the Plaintiffs are the direct beneficiaries of the contract and the program which effectively means any violation of the SPA or guidelines of the MHA/HAMP program would potentially be considered to be an "adverse action" against the Plaintiffs.  Under the MHA/ HAMP guidelines BANA was required to suspend foreclosure proceedings when a Trial Period Plan (herein referred to by it's common name TPP) is offered to the applicant.  Though the Plaintiffs were not offered a TPP, BANA is also required under MHA/HAMP and the MHA guidebook Chapter II § 3.1.1 not to refer any loan to foreclosure or conduct a scheduled foreclosure sale unless and until the borrower is evaluated for HAMP and is determined to be ineligible for the program, the borrower is offered a TPP but fails to make current TPP payments, the servicer established Right Party Contact and has sent at least two written requests asking the borrower to supply required information and otherwise satisfied the reasonable effort solicitation standard and the borrower failed to respond by the dates indicated in those requests, the servicer satisfied the reasonable effort solicitation standard without establishing Right Party Contact, the borrower or co-borrower states he or she is not interested in a HAMP modification and such statement is reflected by the servicer in it's servicing system and or mortgage file, or the servicer has resolved the escalated case.  BANA did not suspend the foreclosure or the foreclosure sale and did not fulfill the requirement of law before

the Sheriff's sale. As a result BANA violated the law by proceeding with the Sheriff's sale of the property without first evaluating and responding to the Plaintiffs regarding their application for modification and relief.

8. BANA engaged in unfair and deceptive acts when it notified the Plaintiffs verbally upon the Plaintiffs final inquiry, contact by phone with BANA, and prior to the Sheriff's sale that BANA would suspend and postpone the Sheriff's sale. BANA also ceased communication with the Plaintiffs after assuring the Plaintiffs that the Sheriff's sale would not proceed.

9. BANA violated the Federal Trade Commission Act § 5 with regard to unfair and/or deceptive acts defined as an act or practice that causes or is likely to cause substantial injury to consumers, cannot be reasonably avoided by consumers, and is not outweighed by countervailing benefits to consumers or to competition. Public policy, as established by statute, regulation, or judicial decisions, may be considered with all other evidence in determining whether an act or practice is unfair. In this case BANA made verbal representations that the Sheriff's sale would not proceed and would be suspended pending the outcome of the HAMP application review. HAMP mandates that the foreclosure and sale of the property be suspended as well during the process. BANA made further representations that the HAMP application review was being processed by sending notice to the

Plaintiffs that the application and documentation had been received and that they would hear from BANA within 20 days.  When BANA did not respond to the Plaintiffs regarding their application for a mortgage modification and relief under HAMP and proceeded to the Sheriff's sale they violated the law by way of a these unfair and deceptive acts.  This caused substantial injury to the Plaintiffs due to the Sheriff's sale of their property as well as emotional distress, expenses for moving and storing personal items, and emergency travel expenses.  This action also rises to the standard of substantial injury as it directly affected four generations of women  who lived in the home.  Plaintiff Alexis Guthrie also has living with her a daughter, a mother who has recently suffered a stroke and requires periodic personal care and has mobility issues as well as a grandmother who suffers from dementia and requires 24 hour a day supervision and care all of who resided in the home at the time of the actions of BANA against the Plaintiffs.  The effect of BANA's actions is the further displacement of the plaintiff and her family as well as increased care costs for the Plaintiffs mother who will require assisted living at minimum.  BANA's actions are not outweighed by countervailing benefits to consumers or to competition as the HAMP program is designed to assist homeowners in avoiding foreclosure and allowing them to stay in their homes.  Since foreclosure effects not only the homeowner but the neighborhood property values as well, and has major economic effects collectively in the economy at large there is little if any outweighing benefit to BANA's actions.  Furthermore these

acts by BANA could not be reasonably avoided by the plaintiff if BANA does not in good faith and under the requirements of the law review and process the Plaintiffs application for mortgage modification and relief under the HAMP.  The Plaintiffs could also not reasonably avoid this act or practice by BANA when BANA refused to communicate with the Plaintiffs and essentially ceased communication.  The Plaintiffs were under the reasonable understanding that their home was not being sold at auction and that they were being reviewed for HAMP by BANA. As a result, the Plaintiffs were not given the option by default to redeem the home even if the sale would have been valid under the law because they reasonably thought that the Sheriff's sale had been suspended by BANA instead of proceeding as had been done on previous occasions.  This action prevented the Plaintiffs from exercising their right to redemption under the law.  By the time the Plaintiffs had any idea that the sale had proceeded their mandatory redemption period under the law had ended and eviction proceedings had been started against the Plaintiffs.

10. BANA also violated regulations by the Office of the Currency Comptroller (herein referred to as OCC) under Title 12 § 37.3(b) pertaining to misrepresentations regarding debt cancelation contracts and debt suspension agreements.  As the acceptance of TARP funds obligated required participation in MHA/HAMP, BANA is bared from engaging in any practice or use of any

advertisement that could mislead or otherwise cause a reasonable person to reach an erroneous belief with respect to information that must be disclosed under this part.  BANA entered into a debt cancelation contract or suspension agreement with the U.S. Treasury Department and as they are governed under the OCC the SPA established such a contract.  Though the Plaintiffs are not direct party to the contract or agreement with the U.S. Treasury Department, the funds came from taxpayer dollars, and homeowners including the Plaintiffs were the direct beneficiaries of the SPA contract and the HAMP.  As the Plaintiffs are not claiming breach of contract but rather violation of law and the regulations of the governing entities who enforce the laws that the banks are regulated under, the SPA contract obligates BANA in the case of this action to the regulations established by the OCC in  Title 12 § 37.3(b).  BANA is in violation of this regulation because they engaged in deceptive acts and practices which misrepresented to the Plaintiffs the status of their HAMP application and request for relief under MHA/HAMP, as well as the status of the foreclosure sale of the home.  Furthermore BANA did not properly communicate to the Plaintiffs the result of their application and did not provide the Plaintiffs with any reason for the decision or the required numbers used to determine the decision. The Plaintiffs were not given ample time as provided under the HAMP regulations to respond and correct the data points in an appeal of the HAMP decision before the foreclosure sale could proceeded forward in a legal manner.  The Plaintiffs were also not afforded information on any other programs

that may have benefited them under the law nor were the Plaintiffs provided with ample time to apply for those possible programs as provided under the HAMP guidelines before the foreclosure or Sheriff's sale moved forward.  As the Plaintiffs were not informed by BANA of the results, and BANA moved on the Sheriff's sale after advising the Plaintiffs verbally that the Sheriff's sale would be postponed/ suspended; BANA violated the OCC regulations.

## Parties, Jurisdiction, and Venue

11. The Plaintiff Alexis Guthrie a resident of Minnesota currently resides at 325 5th Ave SE, Milaca, MN 56353.

12. The Plaintiff Christopher Guthrie a resident of Minnesota currently resides at 814 Charlotte Dr., Anoka, MN 55303.

13. The Defendant Bank of America, National Association and its subsidiary BAC Home Loans Servicing LP, et al. are corporate residents of North Carolina and are headquartered at 100 North Tryon Street, Charlotte, North Carolina 28202.

14. The Defendant The Bank of New York Mellon fka The Bank of New York as Trustee is a corporate resident of New York and is headquartered at 1 Wall Street, New York, NY 10286.

15. The Venue is appropriate in this court as the Plaintiffs are both residents of Minnesota and the disputed property and actions against the Plaintiffs and the property in question are located in Minnesota.  The defendants are both corporate legal residents of other states and neither have any offices or places of corporate business within the state of Minnesota; as such, this becomes a diversity filing placing it in the jurisdiction of the United States District Court of Minnesota.

## **Facts**

16. On the date of 5 March 2007 Christopher Guthrie and Alexis Guthrie the Plaintiffs entered into a mortgage with Countrywide Financial Corp. which was taken over by Bank of America, National Association on 23 August 2007 and serviced at that time by BAC Home Loans Servicing LP, a subsidiary of Bank of America, NA.  The loan I.D. number is 164386267.

17. On 19 April 2011 the Plaintiffs signed and submitted a Request for Modification and Affidavit (RMA) to BAC Home Loan Servicing LP the then servicer of their mortgage for modification under the MHA program.

18. On 22 April 2011 Notice of Mortgage Foreclosure Sale; Homestead Designation Notice; Help for Homeowners in Foreclosure; Foreclosure: Advice to Tenants; Notice of Redemption Rights was served to Lila Mae Athmann (mother of Alexis Guthrie) at the residence located at 325 5th Ave SE, Milaca, MN, 56353.

19. The property was originally scheduled for Sheriff's sale on 14 June 2011. The Sheriff's sale was first delayed and rescheduled to 16 August 2011 and later was delayed a second time and rescheduled to 4 October 2011.

20. On 27 July 2011 BANA shipped a package to the Plaintiffs containing a the initial letter also dated 27 July 2011 in which BANA states the Plaintiffs' loan modification request under HAMP was not eligible. The reason provided on the letter was that the Plaintiffs "did not provide us with the documents we requested". The letter states that a notice which listed the specific documents BANA needed and the time frame required to provide them was sent to the Plaintiffs more then 30 days prior to the notification letter. The letter states according to the guidelines of HAMP that the Plaintiffs had 30 days to appeal the decision. The Plaintiffs were

given at the time of the letter until 26 August 2011 to appeal if the Plaintiffs felt the information used to determine their eligibility was incorrect.  The notification letter also states that the sale at that time was pending and on hold and that the hold would continue to remain in effect while the Plaintiffs were being considered for other foreclosure avoidance programs.

21. On 29 July 2011 BANA sent the Plaintiffs a letter stating that BANA had received the Plaintiffs' request for workout assistance, and that BANA was unable to complete their review process due to missing information.  BANA states that they have attempted to contact the Plaintiffs to obtain the missing information without success.  BANA states that if they did not receive the information previously requested the Plaintiffs workout file would be closed on 8 August 2011.

22. On 1 August 2011 BANA sent the Plaintiffs a letter stating that BANA had received the Plaintiffs' request for workout assistance, and that BANA was unable to complete their review process due to missing information.  BANA states that they have attempted to contact the Plaintiffs to obtain the missing information without success.  BANA states that if they do not receive the information previously requested the Plaintiffs workout file would be closed on 11 August 2011.

23. On 8 August 2011 BANA sent a letter to the Plaintiffs confirming that BANA had received their correspondence.  The letter also states that the Plaintiffs could expect a complete response within twenty (20) business days.

24. On 12 August 2011 a letter was sent to the Plaintiffs from Peterson, Fram, & Bergman, P.A. notifying the Plaintiffs that they Mortgage Foreclosure Sale had been postponed to 4 October 2011.

25. On 26 September 2011 BANA sent the Plaintiffs a letter stating that BANA had received their correspondence. The letter also states that the Plaintiffs could expect a complete response within twenty (20) business days.

26. On 4 October 2011 the Mortgage Foreclosure Sale proceeded to completion.

27. On 16 April 2012 the Plaintiffs received a notice from Bank of America N.A. addressed to "current resident" stating that the property in which they reside had been foreclosed and as a result the property was being serviced by Bank of America N.A.  This was the first indication of any sort hinting at an assumed change in legal ownership.

28. On 25 April 2012 a notice was sent from Peterson, Fram, & Bergman P.A. (signed by John M. Miller) the representatives for BNYM addressed to the Plaintiffs at the property located at 325 5th Ave SE, Milaca, MN, 56353.

29. On 11 May 2012 Plaintiff Alexis Guthrie returned home to the property address at 325 5th Ave SE, Milaca, MN, 56353 and found the eviction summons paperwork taped to the back door of the structure.

## Where as Plaintiffs Request for the following Relief and Judgment

30. Plaintiffs request the court grant relief in the form of an emergency injunction and restraining order barring the eviction from proceeding.

31. The Plaintiffs also request the court enter judgment in the form of a punitive injunction order nullifying the foreclosure, the foreclosure sale, and requiring full compliance and consideration of the HAMP process by BANA and BNYM, and restoration of the Plaintiffs' 6 month right of redemption.

32. The Plaintiffs request punitive/exemplary damages against the Defendants in the amount of $10,000 for each violation of the law under which there is prescribed penalty of that amount, and $200,000 for emotional and mental

distress suffered as a result of the ambush sale and eviction notification; and for the costs of storage and removal of household items, lost wages, and emergency travel expenses to and from the property as a result of the eviction proceeding.

33. The Plaintiffs also request any further relief that the court deems appropriate.

## <u>Verification and Acknowledgement</u>

A. I have read this document. To the best of my knowledge, the information contained in the document is well grounded in fact and is warranted by existing law.

B. I have not been determined by the court to be a frivolous litigant or subject to an order precluding me from serving and filing this document.

C. I am not serving or filing this document for any improper purpose, such as to harass the other party or to cause delay or needless increase in the cost of litigation or to commit a fraud on the court.

D. I understand that if I am not telling the truth or if I am misleading the court or if I am serving or filing this document for any improper purpose, the court

can order me to pay money to the other party, including reasonable expenses incurred by the other party because of the serving or filing of this document such as court costs, and reasonable attorneys fees.

Alexis Guthrie
Plaintiff

_Signature_
Signature

325 5th Ave SE
Milaca, MN 56353
Address

320-982-1985
Phone Number

Subscribed and sworn to before me

This _24_ day of _Sept_, 20 _12_

_Notary_
Notary Public

1-31-2015
My Commission Expires

Christopher Guthrie
Plaintiff

_Signature_
Signature

814 Charlotte Dr
Anoka, MN 55305
Address

763-421-8745
Phone Number

Subscribed and sworn to before me

This _24_ day of _Sept_, 20 _12_

_Notary_
Notary Public

1-31-2015
My Commission Expires


SHAWNA R. ARVIDSON
Notary Public
Minnesota
My Commission Expires January 31, 2015

SHAWNA R. ARVIDSON
Notary Public
Minnesota
My Commission Expires January 31, 2015