UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Christopher Guthrie and Alexis Guthrie,

      Plaintiffs,

  v.

Bank of America, National Association,
BAC Home Loan Servicing LP, and
The Bank of New York Mellon,

      Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 12-2472 ADM/LIB

___

Alexis Guthrie and Christopher Guthrie, pro se.

Andre T. Hanson, Esq., and Sparrowleaf Dilts McGregor, Esq., Fulbright & Jaworski LLP, Minneapolis, MN, on behalf of Defendants.

___

## I. INTRODUCTION

Plaintiffs Alexis and Christopher Guthrie have filed two actions against Defendants Bank of America, N.A. ("Bank of America"), BAC Home Loan Servicing LP ("BAC"),[1] and The Bank of New York Mellon ("BNYM"). On May 25, 2012, Plaintiffs initiated the first action, "Guthrie I," in state court. The Guthrie I complaint alleged Defendants had mishandled their foreclosure process, and asserts state law and common law causes of action. On September 26, 2012, Plaintiffs initiated a second action, "Guthrie II," in federal court against the same defendants regarding the same facts, this time alleging federal law causes of action. Plaintiffs also filed a Motion for Emergency Injunctive Relief in Guthrie II, seeking a temporary restraining order to halt the eviction action filed by BNYM against them. Mot. Emerg. Inj. Relief [Docket No. 6]

___

[1] Bank of America is the successor by merger of BAC. Defs.' Mem. Supp. Mot. Dismiss [Docket No. 15] ("Defs.' Supp.") 1.

("Pls.' Mot. TRO").[2] Although Plaintiffs forwarded summons to the U.S. Marshal for service on Bank of America and BNYM, Defendants were never served with the complaint in Guthrie II. Unaware that the second action existed, Defendants removed Guthrie I to federal court and then filed a motion to dismiss it.

On October 18, 2012, the undersigned United States District Judge heard oral argument on Defendants' Motion to Dismiss Plaintiffs' Complaint in Guthrie I. [Docket No. 3] (Case No. 12-1585). At oral argument, Defendants learned of Guthrie II for the first time. Plaintiffs informed the Court during the hearing they did not intend to pursue their claims in Guthrie I, and thus did not oppose Defendants' motion to dismiss the complaint in that action. The Court then dismissed Guthrie I without prejudice. Order [Docket No. 13] (Case No. 12-1585).

To expedite the case, the Court allowed Defendants to waive service of Plaintiffs' complaint and motion for a TRO in Guthrie II, and file a response to the motion by November 16, 2012. Id. The Court informed the parties it would then take the motion under advisement. Defendants waived service and have now filed both a response to Plaintiffs' motion for a temporary restraining order as well as a new motion to dismiss. [Docket Nos. 13, 19]. Plaintiffs have not responded to Defendants' motion. For the reasons stated below, the Court: (1) grants Defendants' motion to dismiss; and (2) denies Plaintiffs' motion for a temporary restraining order as moot. As a result of this Order, the Court also strikes the hearing scheduled for this motion on January 24, 2012.

---

[2] Unless otherwise indicated, all citations to the record are to Guthrie v. Bank of Am., N.A., No. 12-2472, ADM/LIB (D. Minn. 2012) ("Guthrie II").

## II. BACKGROUND

On March 5, 2007, Plaintiffs obtained a loan secured by a mortgage on their home. Compl. [Docket No. 1] ¶ 16. BNYM obtained ownership of the loan, and Bank of America serviced it. See id. Plaintiffs defaulted on their loan by March 2010.[3] On April 19, 2011, Plaintiffs submitted a request to BAC for a modification of their mortgage in accordance with the government's "Home Affordable Mortgage Program" (HAMP), a part of the larger "Making Home Affordable" Program ("MHA"). Compl. ¶ 17. On or about April 22, 2011, BNYM began the foreclosure process by serving a Notice of Mortgage Foreclosure Sale on Plaintiffs. See id. ¶ 18.

On July 27, 2011, Bank of America sent a letter to Plaintiffs stating it could not modify Plaintiffs' home mortgage because the bank had not received the documents it requested. Id. ¶ 20; Pls.' Mot. TRO Ex. 3 [Docket No. 7].[4] In the letter, Bank of America stated it would consider Plaintiffs for other foreclosure avoidance options and if the foreclosure sale for plaintiffs' home was on hold, that hold would continue during this review period. Pls.' Mot. TRO Ex. 3. Bank of America also stated that while Plaintiffs "would not lose [their] home during this review period," they should not ignore any foreclosure or eviction notices as Plaintiffs may still need to respond to such notices to protect their rights. See id.

---

[3] A more detailed history of Plaintiffs' mortgage is offered in the Court's Order in Guthrie I. See Order [Docket No. 13] (Case No. 12-1585); see also Not. of Removal [Docket No. 1] Ex. 2 (foreclosure notices and affidavits) (Case No. 12-1585).

[4] Plaintiffs refer to several written communications in their complaint that they subsequently submitted as exhibits in support of their motion for a TRO. The Court takes these documents into consideration in deciding Defendants' motion to dismiss. See Illig v. Union Elec. Co., 652 F.3d 971, 976 (8th Cir. 2011) (holding court may consider materials embraced by pleadings as well as exhibits attached to pleadings in Rule 12(b)(6) motions) (citations omitted).

Plaintiffs appear to have begun workout assistance discussions with Bank of America at about the same time. Compl. ¶ 21. On July 29, 2011, Bank of America wrote that it could not complete the review process and would close Plaintiffs' "workout file" on August 8, 2011, because the bank had not received the information it requested. Id. ¶ 21; Pls.' Mot. TRO Ex. 4. The bank also informed Plaintiffs that if their loan was in foreclosure, the foreclosure sale would proceed unless specifically stated otherwise in writing. Pls.' Mot. TRO Ex. 4. Plaintiffs then requested workout assistance a second time, which Bank of America denied due to missing information. Compl. ¶ 22; Pls.' Mot. TRO Ex. 10. The bank's form letter once more informed Plaintiffs that any scheduled foreclosure sale would proceed unless the bank stated otherwise in writing. Pls.' Mot. TRO Ex. 10.

On August 12, 2011, BNYM's attorneys informed Plaintiffs by letter that it had postponed the foreclosure sale until October 4, 2011, and that Plaintiffs had until April 4, 2012, to vacate the property if the mortgage was not reinstated or the property was not redeemed. Compl. ¶ 24; Pls.' Mot. TRO Ex. 6. On October 4, 2011, Defendants proceeded with the sale as noticed, at which BNYM purchased Plaintiffs' property. Id. ¶¶ 28-29. On or about May 11, 2012, BNYM began an eviction action against Plaintiffs. See id.

Plaintiffs allege that they sent the information Bank of America requested on multiple occasions, but that the bank deliberately misplaced their documents to delay the loan modification process. Compl. ¶ 4. In August and September 2011, Plaintiffs sent two additional letters to Bank of America regarding their loan. See id. ¶¶ 23, 25. In each instance, Bank of America responded that it would review Plaintiffs' inquiries and respond within 20 days. Id.; Pls.' Mot. TRO Exs. 5, 9. There is no record of what, if any, response Bank of America

4

ultimately offered to these inquires. But Plaintiffs appear to allege Bank of America did not respond to these inquiries and that Plaintiffs assumed the foreclosure sale would not proceed as a result. See Compl. ¶¶ 9-10.

On May 29, 2012, Plaintiffs initiated Guthrie I in the Mille Lacs County District Court of the State of Minnesota, which Defendants removed to federal court. The eviction action against Plaintiffs was suspended pending the outcome of Guthrie I. Because Guthrie II is now pending, it appears the eviction action remains suspended.

### III. DISCUSSION

**A. Motion to Dismiss Standard**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994) (citation omitted). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party. Ossman v. Diana Corp., 825 F. Supp. 870, 880 (D. Minn. 1993).

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings "shall contain a short and plain statement of the claim showing that the pleader is entitled to relief." A pleading must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

In addition, the Court must construe the complaint liberally where a plaintiff appears pro

se. Estelle v. Gamble, 429 U.S. 97, 106 (1976). Even then, however, the plaintiff may not rely on conclusory allegations; he or she must still allege sufficient facts to state a claim as a matter of law. Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980) (citation omitted).

### B. Plaintiffs' Claims

When construed liberally, the Court agrees with Defendants that Plaintiffs have potentially stated six causes of action, each of which is addressed below.

#### 1. Home Affordable Mortgage Program

Plaintiffs allege Bank of America violated the terms of HAMP, which are a part of the MHA, by failing to provide notice of the foreclosure. Compl. ¶ 6. Plaintiffs also allege Bank of America violated HAMP terms by improperly foreclosing on Plaintiffs' mortgage without first determining Plaintiffs' eligibility for a loan modification. See id. ¶ 7. Defendants respond that Plaintiffs do not have standing to assert such claims. Defs.' Supp. at 8-13.

Because HAMP does not afford a private right of action, Plaintiffs have failed to state a claim for a violation of HAMP. The Emergency Economic Stabilization Act (EESA) created the Troubled Asset Relief Program (TARP) to "repurchase troubled assets on such terms and conditions as are determined by the Secretary [of Treasury]." 12 U.S.C. § 5211(a)(1). In 2009, the Secretary introduced the MHA, which includes HAMP as one of its programs. Id. § 5219(a)(1). Bank of America agreed to participate in MHA and HAMP as a condition of its acceptance of TARP funds. Plaintiffs concede that they were not a party to the agreement between Bank of America and the U.S. Treasury Department that imposed MHA and HAMP participation on Bank of America. Id. ¶ 7. Nevertheless, Plaintiffs argue that as "direct beneficiaries" of these programs, they have the right to claim against Bank of America for violations of MHA and HAMP terms. See id.

6

As this Court has previously held, a private party's only right of action under EESA, and thus the MHA and HAMP, is an administrative action against the Secretary under the Administrative Procedures Act (APA). Ming'ate v. Bank of Am., N.A., No. 11-1787, 2011 WL 4590431, at *3 (D. Minn. Sept. 30, 2011); 12 U.S.C. § 5229(a)(1). As a result, this Court and several other Eighth Circuit courts have held that borrowers do not have a private right of action against lenders under HAMP. See Ming'ate, 2011 WL 4590431, at *3 (collecting cases).

Eighth Circuit courts have also declined to recognize a private right of action based on a borrower's status as a third-party beneficiary of HAMP. See McInroy v. BAC Home Loan Servicing, LP, No. 10-4342, 2011 WL 1770947, at *3 (D. Minn. May 9, 2011) (collecting cases); see also Brisbin v. Aurora Loan Servs., LLC, No. 10-2130, 2011 WL 1641979, at *4-5 (D. Minn. May 2, 2011), aff'd, 679 F.3d 748 (8th Cir. 2012) (affirming district court on all appealed counts, but HAMP claim not appealed).

Consistent with the Eighth Circuit decisions above, the Court holds that Plaintiffs do not have standing to bring a claim under HAMP. In addition, the Court holds Plaintiffs were not intended third-party beneficiaries of the TARP agreement between the government and Bank of America, as that governmental contract was intended to benefit the public at large, not Plaintiffs or any other individual party. See McInroy, 2011 WL 1770947, at *2 ("Government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested.") (citing Restatement (Second) of Contracts § 313 cmt. a).

### 2. Office of the Comptroller of the Currency Regulations, 12 C.F.R. § 37.3(b)

In addition to a direct HAMP violation, Plaintiffs allege Bank of America violated 12 C.F.R. 37.3(b), an Office of the Comptroller of Currency (OCC) regulation. Section 37.3

prohibits national banks from engaging in certain practices in relation to debt cancellation. Namely, the section prohibits: (a) tying agreements; (b) misrepresentations regarding disclosures required by the regulations; and (c) certain contract terms related to debt cancellation. 12 C.F.R. § 37.3. Plaintiffs allege Bank of America violated subsection (b) of the regulation by misrepresenting the status of Plaintiffs' HAMP application as well as the status of the foreclosure sale of their home. Compl. ¶ 10. Defendants request dismissal of this claim, arguing that like HAMP, § 37.3 does not create a right of private action. Defs.' Supp. 13-15.

The Court holds that 12 C.F.R. § 37.3(b) does not create a private right of action for misrepresentation. While a smaller number of courts appear to have ruled on this issue than on standing under HAMP, their reasoning is persuasive. As Defendants note, Judge Kyle recently addressed private rights of action under § 37.3. See Lewis v. Phoenix Am. Adm'rs, Inc., No. 10-2582, 2011 WL 221308, at *1 (D. Minn. Jan. 21, 2011). In Lewis, the court held that federal regulations generally allow two forms of private enforcement: (1) suits by private parties against the regulatory agency itself under the APA; and (2) suits brought under federal-question jurisdiction, to the extent the text of the statute or regulation at issue invokes a private right of action. Id. (citing Kendall-Jackson Winery, Ltd. v. Branson, 212 F.3d 995, 998 (7th Cir. 2000) and Alexander v. Sandoval, 532 U.S. 275, 291 (2001)). The court in Lewis recognized that § 37.3(a), regarding tying agreements, allowed a private right of action. Id. But the court found no basis for federal-question jurisdiction under § 37.3(b) and dismissed the plaintiff's claim. Id. at *1-2. This holding was in keeping with Judge Magnuson's decision in May v. Nation Safe Drivers, Inc., No. 10-2577, 2010 WL 5376216, at *4 (D. Minn. Dec. 22, 2010).

Here, Plaintiffs have offered no reason as to why § 37.3(b) creates a private right of action for misrepresentation, and no such basis is evident in either the regulation itself or in

applicable case law. As a result, Plaintiffs do not have standing to sue under 12 C.F.R. § 37.3(b). To the extent Plaintiffs argue § 37.3 allows them to claim a violation of HAMP, this reasoning is also unpersuasive. Section 37.3 does not authorize federal-question jurisdiction under EESA.

### 3. Federal Trade Commission Act § 5, 15 U.S.C. §§ 41 *et seq*.

Section 5 of the Federal Trade Commission Act (FTCA) prohibits "unfair methods of competition in or affecting commerce," as well as the use of "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1). Plaintiffs allege Bank of America violated § 5 of the FTCA by making verbal representations to Plaintiffs that it would delay the foreclosure sale pending the outcome of its HAMP application review. Compl. ¶ 9. The complaint also alleges that Bank of America's failure to respond to Plaintiffs' inquiries—while still proceeding with the foreclosure process—constituted an unfair or deceptive act. See id. Defendants again respond that the FTCA does not create a private right of action, depriving Plaintiffs of standing to bring a claim under the act.

The Eighth Circuit Court of Appeals has held that the FTCA does not create a private right of action. See Morrison v. Back Yard Burgers, Inc., 91 F.3d 1184, 1187 (8th Cir. 1996). In Morrison, the court declined to extend a private right of action under the FTCA, and held that its ruling was in line with other appellate court decisions. See id. (citations omitted). Other courts have also held that the FTCA does not allow private suits following the court's decision in Morrison. See, e.g., Richards v. Great Western Ins. Co., No. 11-965, 2012 WL 695991, at *10 (D. Minn. Jan. 13, 2012) (collecting cases); Friend v. Fryberger, Buchanan, Smith & Frederick, P.A., No. 11-1584, 2012 WL 503796, at *4 (D. Minn. Feb. 14, 2012) (holding that "only the FTC, and not private litigants such as [plaintiff], may enforce the FTCA").

Because the FTCA does not allow a private right of action, Plaintiffs do not have standing to sue with regard to Bank of America's allegedly deceptive practices and acts. Again, to the extent Plaintiffs attempt to plead a HAMP violation by way of the FTCA, this claim is also denied for the reasons stated above.

### 4. Equal Credit Opportunity Act

Plaintiffs allege Bank of America violated the Equal Credit Opportunity Act (ECOA) by failing to properly notify Plaintiffs of their ineligibility for a HAMP loan modification before holding the foreclosure sale. See Compl. ¶ 6. Defendants argue Plaintiffs' ECOA claim is an attempt to circumvent the lack of a private right of action under HAMP. Even assuming the claim's propriety, Defendants argue the denial of Plaintiffs' loan modification does not trigger the ECOA's notice requirements. The latter argument is addressed here.

Under the ECOA, once a lender receives a completed application for credit, the lender has 30 days to notify the applicant of its "action" on the application. 15 U.S.C. § 1691(d)(1). The regulations promulgated in support of the ECOA state this notice requirement triggers upon three events: (1) an approval of credit; (2) a counteroffer for credit; or (3) an "adverse action." 12 C.F.R. § 202.9(a)(i)-(iv). If a lender takes an "adverse action" against the applicant, the lender must also provide a statement of reasons or allow the applicant to request such a statement. 15 U.S.C. § 1691(d)(2).

The ECOA specifically excludes delinquent or defaulted debtors from being subject to "adverse actions." The ECOA's definition of "adverse action" includes denials and revocations of credit, but it excludes "a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default." Id. § 1691(d)(6). The supporting regulations also state that an "adverse action" excludes "any action or forbearance

relating to an account taken in connection with inactivity, default, or delinquency as to that account." Id. § 202.2(c)(2)(ii).

The ECOA's notice requirements do not apply to Plaintiffs. As noted, a lender is only required to provide written notice upon taking one of three types of actions. 12 C.F.R. § 202.9(a)(i)-(iv). Because Bank of America decided that Plaintiffs were not eligible for a loan modification, only the "adverse action" requirements are potentially applicable here. See, e.g., Davis v. Citimortgage, Inc., No. 10-12136, 2011 WL 891209, at *2-3 (E.D. Mich. Mar. 11, 2011) (holding a HAMP loan modification may qualify as an "extension of credit" and thus trigger the ECOA). But Plaintiffs do not dispute that they had defaulted on their mortgage by the time of their loan modification request. As a result, Bank of America's denial of this request did not amount to an "adverse action," and it did not trigger ECOA notice requirements.

Several courts have similarly held that ECOA notice requirements do not apply to delinquent or defaulted borrowers. See Pandit v. Saxon Mortg. Servs., Inc., No. 11-3935, 2012 WL 4174888, at *7 (E.D.N.Y. Sept. 17, 2012) (slip copy) (holding 30-day notice requirement did not apply because plaintiffs were in default on their mortgage); Casey v. Litton Loan Servicing, LP, No. 11-0787, 2012 WL 502886, at *6 (D. Md. Feb. 14, 2012) (slip copy) ("The case law on this matter is clear—a creditor need not provide an adverse action notification when it denies a loan modification request by a delinquent borrower."); Mashburn v. Wells Fargo Bank, N.A., No. C11-0179, 2011 WL 2940363, at *6 (W.D. Wash. Jul. 19, 2011) ("Since Defendant's refusal was not an adverse action, Defendant was not required to make disclosures regarding the refusal."); Schlegel v. Wells Fargo Bank, N.A., 799 F. Supp. 2d 1100, 1107 (N.D. Cal. 2011)

(". . . Plaintiffs remained in default of their original obligation and thus were not entitled to an

adverse action notice under the ECOA."). Given both the statutory language and supporting case law, Plaintiffs have failed to state a claim under the ECOA.

### 5. Promissory Estoppel

In addition to the federal law claims addressed above, Plaintiffs appear to assert a common law cause of action for promissory estoppel. As part of their FTCA allegations, Plaintiffs allege Bank of America "made verbal representations that the Sheriff's sale would not proceed and would be suspended pending the outcome of the HAMP application review." Compl. ¶ 9. As a result of their reliance on these assurances, Plaintiffs allege suffering various damages. See id. Taking these allegations as true, Plaintiffs have potentially alleged that Bank of America should now be held to its promise by voiding the foreclosure sale and halting the eviction process. Defendants respond that Minn. Stat. § 513.33, Minnesota's credit agreement statute, prevents the enforcement of any alleged oral promises to halt the foreclosure process. Defs.' Supp. at 20.

Plaintiffs have not stated a claim for promissory estoppel upon which relief can be granted. The Minnesota credit agreement statute states that a debtor may not enforce a credit agreement, or financial accommodation of a credit agreement, unless it is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the relevant parties. Minn. Stat. § 513.33. The Eighth Circuit Court of Appeals held that Minn. Stat. § 513.33 applies to oral promises to postpone a foreclosure sale because this type of promise amounts to a financial accommodation. Brisbin, 679 F.3d at 752-53. As a result, Plaintiffs may not seek the enforcement of Bank of America's alleged oral promise to suspend their foreclosure sale.

### 6. Failure to Properly Notice Foreclosure Sale

Finally, Plaintiffs allege that Bank of America failed to inform them that the October 4,

2011, foreclosure sale would proceed as noticed. See Compl. ¶ 9. Defendants construe these allegations as stating a sixth claim, for failure to properly notice the foreclosure sale under Minn. Stat. § 580.04 and § 580.07. Defs.' Supp. at 20-21.

Even when construed liberally, these allegations do not state a claim for failure to notice the foreclosure. Plaintiffs do not allege Defendants violated any Minnesota statute regarding foreclosure notice, and they admit receiving notice of the foreclosure sale from Bank of America. Plaintiffs' citation to the FTCA in this section of the complaint, combined with their discussion of "unfair and deceptive acts" and the public good, show Plaintiffs intended to state claim under the FTCA. As discussed above, Plaintiffs do not have standing for such a claim.

The only other cause of action these allegations may suggest is a claim for fraudulent representation by omission. An omission of fact gives rise to a claim of misrepresentation only if one party has special access to the facts and the other does not, or omitting the fact in question is misleading. See Sit v. T & M Props., 408 N.W.2d 182, 185-86 (Minn. Ct. App. 1987) (citing Klein v. First Edina Nat'l Bank, 196 N.W.2d 619, 622 (Minn. 1972)). This is a claim a plaintiff must plead with particularity. See Fed. R. Civ. P. 9(b).

Plaintiffs have not stated a claim for fraudulent misrepresentation by omission. The purported omission is that Bank of America failed to inform Plaintiffs the foreclosure was proceeding as noticed. This omission is not based on special access to the facts, as Plaintiffs admit receiving notice of the foreclosure. Nor was this omission misleading. On July 29, 2011, and August 1, 2011, Bank of America explicitly informed Plaintiffs that if Plaintiffs' loan was in foreclosure, it would proceed unless Bank of America specifically stated otherwise in writing. Plaintiffs do not allege, nor do any of the submitted letters indicate, that Bank of America stated in writing it would suspend the foreclosure process. On the contrary, on August 12, 2011, Bank

of America's attorneys sent Plaintiffs a letter informing them that the foreclosure sale would proceed on October 4, 2011, and that Plaintiffs would be required to vacate the property on April 4, 2012.  Pls.' Mot. TRO Ex. 6.  These undisputed communications, which Plaintiffs acknowledge in their complaint, preclude a common law misrepresentation claim.

### C.  Temporary Restraining Order

Plaintiffs have moved for a temporary restraining order halting Defendants' eviction action against them.  This motion is denied as moot because the Court holds that Plaintiffs have failed to state a claim upon which relief can be granted.

### IV.  CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendants' Motion to Dismiss [Docket No. 13] is **GRANTED**;

2. Plaintiffs' Motion for Emergency Injunctive Relief [Docket No. 6] is **DENIED**;

3. All claims alleged in the Complaint are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  December 14, 2012.